## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Jason Galanis,<br><br>Plaintiff,<br><br>vs.<br><br>Matthew Szulik; Scott Hintz; Keith Dalrymple; Dalrymple Finance LLC, a Florida Limited Liability company;<br><br>and Does 1 through 100 Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br>Judge:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## COMPLAINT AND JURY DEMAND

## <u>THE PARTIES</u>

1.      Plaintiff Jason Galanis ("Galanis") is an individual who resides in and is a citizen of Los Angeles, California.  Galanis is a professional consultant who specializes in identifying and facilitating business combinations and transactions.

2.      Defendant Matthew Szulik ("Szulik") is an individual who resides in and is a citizen of Raleigh, North Carolina. Szulik is a professional investor with extensive experience investing in and managing companies of various sizes.

3.      Defendant Keith Dalrymple, is an individual who, along with his wife Victoria Dalrymple resides in and is a citizen of Newton, Massachusetts, and the Dalrymples are the only members of Defendant Dalrymple Finance LLC (who together with Keith Dalrymple shall hereafter be referred to as "Dalrymple") which has its principal place of

business of Newton, Massachusetts, and purports to provide independent investment research and advisory services.

4.        Defendant Scott Hintz ("Hintz") is an individual who resides in and is a citizen of Atlanta, Georgia.

5.        Plaintiff is unaware of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 100, and Plaintiff will amend this Complaint to allege their names as soon as they are ascertained.  Plaintiff is informed and believe and based thereon alleges that at all times mentioned herein each Defendant designated as a Doe Defendant is or was in some manner or degree responsible for the injuries suffered by Plaintiff as alleged in this Complaint.

6.        Plaintiff is informed and believe and based thereon allege that at all times herein mentioned each of the Defendants was the agent, servant or employee of the other defendants, and acted with the permission and consent of each other and in the course and scope of the authority to act for each other, and each has ratified and approved the acts, omissions, representations and activities of each other, and was doing the things herein alleged, while acting within the course and scope of said agency, service or employment.

## JURISDICTION AND VENUE

7.        Federal jurisdiction in this Court is predicated on (a) 28 U.S.C. §1332 because the controversy in this matter is between citizens of different states, and the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs, and (b) 28 U.S.C. § 1331 because the action arises under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's State law claims under 28 U.S.C. §1367(a).

8.        Venue is proper in this judicial district based upon 28 U.S.C. § 1391 because a

substantial portion of the events or omissions giving rise to the claims occurred in this

judicial district, a substantial portion of property that is the subject of the action is

situated in this judicial district, and Defendant Dalrymple resides in this judicial district

## GENERAL ALLEGATIONS

### SZULIK'S SOPHISTICATED INVESTMENT HISTORY

9.        Plaintiff is informed and believes and on that basis alleges that for more than nine

years Szulik was at various times the Chairman and Chief Executive Officer of RedHat,

Inc. ("Redhat"), where he developed RedHat from an early-stage technology startup to a

S&P 500 NYSE listed global software company as one of the largest providers of open

source software. Plaintiff is informed and believes and on that basis further alleges,

Szulik has a personal net worth in excess of $250,000,000.00 and has over two decades

of experience managing investments in other microcap companies and being an active

major investor and adviser to early stage companies.

10.       Plaintiff is informed and believes and on that basis alleges that since

approximately 1996 and continuing until mid 2009, Szulik's investment advisers were

James Tagliaferri and a related entity, TAG Virgin Islands, Inc., and its predecessor

entities Taurus Advisory Group, Inc. and Taurus Advisory Group, LLC (collectively,

"TAG").  Plaintiff is informed and believes and on that basis alleges that Szulik borrowed

funds from TAG to purchase his initial interest in Redhat, and after that investment grew

exponentially, repaid TAG only the principal.

11.       Plaintiff is informed and believes and on that basis alleges that throughout the 13

years of the TAG/Szulik investment advisory relationship, Szulik actively participated in

the selection of and was aware of the nature of investments TAG made on Szulik's behalf.  Plaintiff is informed and believes and on that basis further alleges that Szulik had extensive business contact with the companies he was invested in, and utilized his position as a significant investor to influence those companies' business decisions. Plaintiff is informed and believes and on that basis further alleges that Szulik was particularly aware of the state of his investments, their risk and their liquidity; for example, although never formally holding the position, Szulik held himself out to be the Chairman of a company he invested in called International Equine Acquisitions Holdings, Inc. ("IEAH"), operator of a thoroughbred racing stable and owner of an equine hospital. Plaintiff is informed and believes and on that basis further alleges Szulik introduced and interviewed and proposed the senior management of IEAH, who reported to the actual Chairman, and developed plans to relocate IEAH to North Carolina, near Szulik's home. Plaintiff is informed and believes and on that basis further alleges Szulik additionally appeared at the winner's circle at events in which IEAH-owned horses participated, including the Kentucky Derby winner's circle, a role typically reserved to owners and chief executives.

12.     Plaintiff is informed and believes and on that basis alleges that the TAG/Szulik investment relationship was financially rewarding to Szulik and that Szulik made tens of millions of dollars in profit on investments recommended by TAG, resulting in Szulik's rate of return from TAG portfolio of investments being both positive (his TAG investment gains, less losses, were positive) and his portfolio's performance greatly exceeding common investor benchmarks (e.g. the return of the S&P 500 stock index) throughout the period of the TAG/Szulik investment relationship. TAG managed risk in

the portfolio in part by diversifying investments across multiple unrelated investments such that investment positions that underperformed were balanced with those that overperformed, and, in the aggregate, this risk management approach yielded favorable investment returns for Szulik.

### SZULIK'S COERCION OF TAG AND USE OF GALANIS' FUNDS

13.     Plaintiff is informed and believes and on that basis alleges that beginning in 2008, Szulik brought unreasonable pressure to bear on TAG through legal threats in order to gain economic advantages in connection with certain investments that Szulik became disillusioned with in part because some portfolio investments were not readily marketable, or otherwise had no reasonable right of redemption.  Plaintiff is informed and believes and on that basis further alleges that although the investments were initially made with Szulik's knowledge and consent, Szulik unreasonably demanded under threat of litigation that TAG remove Szulik from those investments, with the effect being that TAG was coerced into constructively guaranteeing Szulik preferential liquidity.  Plaintiff is informed believes and on that basis further alleges that as an additional threat aimed at coercing TAG into removing Szulik from the allegedly illiquid investments, Szulik has also repeatedly threatened to attempt to damage TAG through the attack in a public forum of the personal and professional reputations of TAG in the event he did not achieve his economic objectives.

14.     Plaintiff is informed and believes and on that basis alleges that as a result of Szulik's threats, duress and coercive actions, Szulik coerced TAG to remove Szulik from his immature investments by using funds of Galanis or companies owned by Galanis

(collectively, the "Galanis entities"), derived principally from the sale or disposition of securities belonging to Galanis entities.

15.     Plaintiff is informed and believes and on that basis alleges that as a result of the coercive actions by Szulik, whereby Szulik was removed from immature investments he objected to, Szulik was the recipient of approximately $30,000,000.00 in funds from the Galanis entities, in exchange for which the allegedly non-marketable securities Szulik objected to owning to maturity were placed, in whole or in part, in the Galanis entities' accounts.

## SZULIK'S TAX AVOIDANCE SCHEME

16.     Plaintiff is informed and believes and on that basis alleges that Szulik has a practice of employing legally questionable tax positions.

17.     Plaintiff is informed and believes and on that basis alleges that Szulik held a sufficient number of securities of certain companies, including, but not limited to, Conversion Services International, Inc., to qualify as an affiliate or otherwise trigger disclosure requirements set forth by the United States Securities and Exchange Commission under Section 13 of the Securities Exchange Act of 1934 and related regulations.  Plaintiff is informed and believes and on that basis further alleges that Szulik sold shares in the aforementioned companies without making required disclosures and in violation of applicable restrictions placed on affiliates, as required by law. Plaintiff is informed and believes and on that basis further alleges that Szulik thereafter claimed millions of dollars in losses on the sale of these securities - sold in violation of the law - and exploited these losses in an illegal scheme to improperly reduce his tax liabilities.

18.     Plaintiff is informed and believes and on that basis alleges that Szulik claimed unsubstantiated depreciation deductions in order to avoid paying tax on otherwise taxable income.

19.     Plaintiff is informed and believes and on that basis alleges that Szulik is an equity partner in Pegasus Holdings Group Stables, LLC ("Pegasus"), an investment vehicle for thoroughbred racehorses, and part owner of Kentucky Derby winner Big Brown. Plaintiff is informed and believes and on that basis further alleges that Szulik extended a loan to IEAH and received in exchange a 10% equity interest in Big Brown, who was an unproven horse with no winning track record at the time it was acquired by the IEAH group and Szulik for $4,000,000.00.

20.     Plaintiff is informed and believes and on that basis alleges that as a result of Big Brown's subsequent success at prominent races, it eventually became worth an estimated total of $60,000,000.00, as valued when the prominent farm Three Chimneys also acquired a 10% equity interest.  Plaintiff is informed and believes and on that basis further alleges that when Szulik contributed his interest in Big Brown for a minority equity interest in Pegasus, his share of the company's main asset was only worth $400,000.00, or 10% of $4,000,000.00.

21.     Plaintiff is informed and believes and on that basis alleges that in furtherance of Szulik's scheme to avoid paying tax on otherwise taxable income, Szulik improperly and retroactively shifted his tax basis in Pegasus to reflect the Big Brown's increased $60,000,000.00 valuation - up from the actual $4,000,000.00 valuation basis of his investment. Plaintiff is informed and believes and on that basis further alleges Szulik filed tax returns with the Internal Revenue Service improperly declaring depreciation

deductions of several million dollars based on Big Brown's increased valuation ($60,000,000.00), when Szulik should have only taken deductions based on Big Brown's value at the time of his investment ($4,000,000.00).  Plaintiff is informed and believes and on that basis further alleges that in addition, notwithstanding his retroactive tax basis change, Szulik was a passive investor in Pegasus and thus the depreciation deductions were subject to limitations set out by the Internal Revenue Code.

22.     Plaintiff is informed and believes and on that basis alleges that in the calendar year 2010 alone, Szulik exercised RedHat, Inc. stock options he received as part of his employee compensation at RedHat resulting in otherwise-taxable gains in excess of $75,000,000.00 taxable income.  Plaintiff is informed and believes and on that basis further alleges that as part of a fraudulent scheme to avoid paying millions of dollars of ordinary income tax on these exercised employee stock options, Szulik is attempting to establish a fraud loss or valueless securities basis for claiming vastly overstated deductions on his federal tax returns related to still-valuable investments made by TAG on Szulik's behalf, which Szulik now fraudulently claims are worthless under § 165 of the Internal Revenue Code, and related regulations.  Absent the fraud loss or valueless securities claim, any losses from passive investments made by Szulik would only be deducted from passive investment gains, and not from ordinary income which comprises the vast majority of Szulik's income that he is trying to avoid paying millions of dollars of tax on.

23.     Plaintiff is informed and believes and on that basis alleges that at the close of calendar year 2010, Szulik filed a strategically-timed lawsuit against TAG in the United States District Court for the Eastern District of North Carolina ("the TAG litigation") in

order to bolster Szulik's claim that the TAG-made investments Szulik still holds are worthless, and that Szulik has been the victim of a fraud - a central element in Szulik's planned tax evasion strategy which is wholly dependent upon establishing a theft-loss, worthless securities, or bad debt deduction, potentially available under §§ 165 - 166 of the Internal Revenue Code, or elsewhere, to avail himself of more favorable tax treatment.

24.     Plaintiff is informed and believes and on that basis alleges that the remaining investments made by TAG on Szulik's behalf currently have substantial value, and are not worthless as the TAG litigation claims, yet Szulik has not attempted to mitigate any alleged losses or proceed against any of the substantial collateral securing the investments, which could undermine the tax strategy being employed by Szulik.

### SZULIK'S UNLAWFUL CAMPAIGN TO DERAIL CORPORATE PLANS OF PUBLICLY TRADED COMPANIES FOR HIS PERSONAL BENEFIT

25.     Plaintiff is informed and believes and on that basis alleges that through his relationship with TAG, Szulik became aware of a company formerly known as Asia Special Situation Acquisition Corp. ("ASSAC"), a Special Purpose Acquisition Company which has since been renamed Gerova Financial Group Ltd. ("Gerova"), a New York Stock Exchange-listed reinsurance company with substantial holdings in financial services companies.

26.     Plaintiff is informed and believes and on that basis alleges that in 2009, ASSAC announced plans to acquire White Energy Co. Ltd. ("WEC"), a publicly traded natural resources company with a $1,000,000,000.00 market value and listed in the ASX S&P 200 Index, and which TAG advised Szulik to invest in when it was an fledgling technology-oriented coal company with limited liquidity.    Plaintiff is informed and

believes and on that basis further alleges that Szulik has a gross return in excess of 1200% on his approximately $7,000,000.00 initial investment in WEC, or an approximate profit of over $90,000,000.00 million resulting from TAG's investment advice.

27.     Plaintiff is informed and believes and on that basis further alleges that Szulik was opposed to the ASSAC-WEC merger for fear that his liquid holdings in WEC would become restricted holdings in ASSAC. Plaintiff is informed and believes and on that basis further alleges that to further his perceived economic interests in WEC, Szulik improperly campaigned against the imminent ASSAC-WEC merger by contacting WEC's executives and making materially false, misleading and disparaging statements regarding ASSAC and other parties involved with the transaction, particularly Galanis.

28.     Plaintiff is informed and believes and on that basis alleges that as a direct result of Szulik's fraudulent campaign targeting Galanis, the ASSAC-WEC transaction was terminated, resulting in lost value to ASSAC of hundreds of millions of dollars.

29.     Plaintiff is informed and believes and on that basis alleges that in early 2011, after filing his Complaint against TAG designed to further his planned tax avoidance strategy, Szulik learned through his position as a lender and significant shareholder of IEAH of a proposed acquisition of IEAH by Gerova.  Plaintiff is informed and believes and on that basis further alleges that Szulik immediately determined that the IEAH-Gerova merger would be fatal to Szulik's planned tax evasion scheme, since Szulik's private IEAH debt and equity securities - which Szulik alleges in the TAG litigation are worthless - would be converted into valuable, publicly traded Gerova stock as a result of the proposed acquisition, and could thereby undermine Szulik's improper tax strategy.

30.     Plaintiff is informed and believes and on that basis alleges that in an effort to prevent the proposed IEAH-Gerova merger, Szulik quickly orchestrated a campaign of disinformation similar to what he employed to block the ASSAC-WEC merger, and again focused heavily on making false, misleading and disparaging statements regarding Galanis, including referring to Galanis in litigation to which Galanis is not a defendant. Plaintiff is informed and believes and on that basis further alleges that Szulik instructed his attorneys to contact Galanis and threaten that litigation would immediately ensue making allegations about Galanis and TAG (and Galanis' potential liability for Szulik's claimed $60,000,000.00 in losses detailed in the TAG litigation) unless Galanis, in his capacity as an employee of Gerova's subsidiary, attempted to persuade Gerova management to immediately terminate the proposed IEAH-Gerova merger.

31.     Plaintiff is informed and believes and on that basis alleges that Szulik has repeatedly employed a similar strategy of interfering with proposed transactions of companies related to his investments, placing his immediate personal financial interests above other shareholders, and the companies' overall stability and longevity.  For example, Plaintiff is informed and believes and on that basis further alleges that Szulik blocked separate proposed mergers of Paseo De La Reforma Partners LLC and Protein Polymer Technology, Inc. based on Szulik's objection to any restrictions being placed on his shares as a result of the mergers, notwithstanding that the proposed mergers could have been highly favorable to the other debt and equity holders of the companies.

**SZULIK'S USE OF THIRD PARTIES TO FURTHER HIS SCHEME**

32.     Plaintiff is informed and believes and on that basis alleges that Szulik has joined together with numerous third parties to assist Szulik in attempting to control the

valuations of certain securities Szulik holds, in order to support Szulik's tax avoidance position which claims those securities are valueless.

33.     Plaintiff is informed and believes and on that basis alleges that Szulik has collaborated with, or has acted with knowledge or reckless disregard of, the related actions and statements of Defendants Hintz and Dalrymple, among others, in an effort to cause or encourage damage to Galanis' reputation, and to manipulate the price for the publicly-traded Gerova stock downward or otherwise interfere with transactions contemplated by Gerova in an attempt to further his tax evasion scheme.

**Szulik's Connections To Hintz**

34.     Plaintiff is informed and believes and on that basis alleges that for a three month period during 2010 Hintz was employed by Net Five Holdings, LLC ("Net Five"), a real estate management company joint venture established between Gerova and Planet Five Development Group, LLC to assist Gerova in managing a property portfolio.

35.     Plaintiff is informed and believes and on that basis alleges that during the course of his employment at Net Five, Hintz was terminated for soliciting kickbacks from contractors engaged by Net Five.

36.     Plaintiff is informed and believes and on that basis alleges that immediately following his termination Hintz was found to have misappropriated or illegally obtained access to emails and documents containing confidential and material non-public information belonging to Galanis, Gerova, Net Five and its employees and that Hintz made unsubstantiated and extraordinary demands for payment from Net Five.

37.     Plaintiff is informed and believes and on that basis alleges that Hintz is a convicted felon, having pled guilty to bank fraud (in violation of 18 U.S.C. § 1344) and

sentenced to a 57-month term of imprisonment.  Plaintiff is informed and believes and on that basis alleges that in court proceedings related to that case, Hintz alleged the existence of a criminal conspiracy between a federal judge, the FBI and organized crime syndicates, and Hintz also attempted to disqualify the presiding judge hearing his appeals.

38.     Plaintiff is informed and believes and on that basis alleges that Hintz is employing an extortive plan targeting Galanis and related entities, and has provided bloggers and Internet message boards with false or misleading information regarding Galanis and his alleged relationships to others, and other businesses, and has utilized misappropriated confidential information in doing so.  Plaintiff is informed and believes and on that basis further alleges that Hintz has communicated threats to friends and business associates of Galanis indicating that Hintz intends to destroy Galanis' professional reputation and business relationship with Gerova unless Hintz is paid large amounts of money.

39.     Plaintiff is informed and believes and on that basis alleges that Hintz has indicated to friends and business associates of Galanis that Hintz was personally aware of actions Szulik intended to bring against Galanis, and is working in cooperation with, or with the knowledge of, Szulik, or his authorized agents, to discredit Galanis and allege affiliations between Galanis and other persons and entities Hintz is also attempting to discredit, including, but not limited to, Gerova.

40.     Plaintiff is informed and believes and on that basis alleges that Hintz has furthered his extortive campaign by distributing and threatening to continue distributing misappropriated confidential information concerning his former employer Net Five, Galanis and Gerova to online bloggers including Robert Flaherty, who have republished information provided by Hintz knowingly or with reckless disregard for the information's

accuracy, or the legality or veracity of its source.  Plaintiff is informed and believes and on that basis further alleges that Hintz's associate Robert Flaherty also has a personal vendetta against Galanis based on prior transactions Flaherty participated in.

41.     Plaintiff is informed surreptitiously and believes and on that basis alleges that Hintz and Szulik's coordinated campaign to discredit Galanis, mischaracterize Galanis' relationship to Gerova, and effectuate a reduction in the stock price of Gerova furthers Szulik's goal of preventing Gerova from consummating the proposed IEAH takeover which Szulik fears will derail Szulik's planned tax-avoidance strategy, and furthers a coordinated effort  by Hintz and his associates to "short sell" Gerova stock.

## Szulik's Connections To Dalrymple

42.     Plaintiff is informed and believes and on that basis alleges that Dalrymple Finance LLC is managed by a husband and wife team, Keith and Victoria Dalrymple. According to biographical information formerly posted on Dalrymplefinance.com, a website located in eastern Europe (Sofia, Bulgaria), Dalrymple Finance LLC claims to offer clients based in Eastern Europe comprehensive alternative asset advisory services.

43.     Plaintiff is informed and believes and on that basis alleges that Defendant Keith Dalrymple was previously Director of Research at New York Global Securities, Inc., and that during his tenure there, FINRA securities regulators found New York Global Securities responsible for various securities violations in connection with the company's equity research reports. Specifically, FINRA regulators concluded that the company, "violated NASD rules governing the content and disclosures required for equity research reports, and rules governing content standards for communications with the public. Plaintiff is informed and believes and on that basis further alleges that the firm failed to

disclose its actual, material conflicts of interest as required by NASD Rule 2711(H)(1)(C) and the reports also violated other sections of NASD's research report rules."   Plaintiff is informed and believes and on that basis further alleges that FINRA imposed a fine of $45,000 (a significant amount by FINRA standards) and suspended the company from publishing any further research for a period of six months.

44.      Plaintiff is informed and believes and on that basis alleges that with the assistance or knowledge of Szulik or his agents, Dalrymple is participating in and coordinating an illegal scheme to manipulate the price of Gerova's stock downward, in order for Dalrymple to financially benefit from a self-disclosed "short" position in Gerova stock. Plaintiff is informed and believes and on that basis alleges that in furtherance of this scheme, Dalrymple knowingly disseminated materially false and misleading information in a report prepared by Dalrymple Finance, LLC dated January 10, 2010 regarding Gerova and Galanis, in an effort to manipulate Gerova's stock price lower for Dalrymple and other short-sellers' financial gain.

45.      Plaintiff is informed and believes and on that basis alleges that Szulik, either directly or through agents, has materially assisted Dalrymple in the hope of prompting a reduction in the stock price of Gerova, and to damage the business reputation of Galanis. Plaintiff is informed and believes and on that basis further alleges that the unique and erroneous allegations and theories formulated by Szulik's legal team and conveyed in a written report and orally to TAG were identical or substantially similar to the erroneous allegations and theories presented in Dalrymple's report.   Plaintiff is informed and believes and on that basis further alleges that the collaboration between Szulik and Dalrymple is intended to effectuate their shared goal of harming Galanis, which in turn

they expected would harm Gerova and cast aspersions on TAG, with a view to further supporting Szulik's multi-million dollar tax evasion scheme.

46.       Plaintiff is informed and believes and on that basis alleges that through the efforts of Szulik, Hintz, Dalrymple and others, all of which were performed with knowing and reckless intent, Galanis and Gerova have been and continue to be damaged, as Defendants have provided the above-described misinformation to various media outlets, whose re-distribution of these falsehoods have caused Gerova and Galanis additional damage, including, but not limited to, expenses incurred in addressing and correcting the falsehoods.

**Count I**
**Intentional Interference With Contractual Relations / Prospective Economic Advantage**
**Against All Defendants**

47.       Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 46, inclusive.

48.       Plaintiff is informed and believes and on that basis alleges that at the time of the proposed ASSAC-WEC merger, Szulik knew Galanis had an independent business relationship with Noble Investment Fund Limited ("Noble") whereby Galanis acted as a consultant to Noble in identifying and facilitating investment opportunities for Noble in exchange for participating in Noble's proceeds resulting from those investments.

49.       Galanis had a reasonable expectation of economic gain resulting from Noble's investment in ASSAC, who, through Galanis' assistance, was poised to benefit from an acquisition of WEC.

50.       Plaintiff is informed and believes and on that basis alleges that Szulik engaged in conduct adversely affecting the relationship when he contacted executives of WEC in

order to persuade them to terminate the imminent transaction with ASSAC.  Plaintiff is informed and believes and on that basis further alleges that in order to convince WEC's executives that the ASSAC-WEC transaction should be terminated, Szulik made materially false, misleading and disparaging statements regarding ASSAC and the other parties involved with the transaction, including Galanis.

51.       Plaintiff is informed and believes and on that basis alleges that in doing so, Szulik intended to destroy or harm Galanis' business relationship with Noble, among others.

52.       Plaintiff is informed and believes and on that basis alleges that Szulik's actions directly and proximately caused harm to Plaintiff's business relationship with Noble, and as a result Galanis has suffered monetary damage in an amount to be proven at trial.

53.       Plaintiff is informed and believes and on that basis alleges that as a result of their campaigns to manipulate the stock price of Gerova downward, discredit Galanis and harm his professional reputation, Defendants Szulik, Hintz and Dalrymple have knowingly interfered with Galanis' business relationship with Gerova and other prospective employers of Galanis, and have caused Galanis damage in an amount to be determined at trial.

### Count II
### Civil Conspiracy
### Against All Defendants

54.       Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 53, inclusive.

55.       Plaintiff is informed and believes and on that basis alleges that Defendants, and each of them, acted in concert or reckless disregard with one or more other Defendants with the agreed upon and shared goal of willfully and maliciously damaging Galanis'

business reputation, harming Galanis' contractual and prospective business relationships, and lowering the stock price of Gerova based on Gerova's relationship to Galanis.

56.     Plaintiff is informed and believes and on that basis alleges that Defendants, and each of them, committed one or more wrongful acts pursuant to the above-described conspiracy.

57.     Defendants' actions in furtherance of the above-described conspiracy directly and proximately caused damage to Galanis' professional reputation and contractual and prospective business relationships, and unless Defendants' future activities in furtherance of the conspiracy are enjoined, Galanis will continue to be damaged, in an amount to be determined at trial.

58.     As a direct result of Defendants' actions in furtherance of the above-described conspiracy Galanis is entitled to and hereby prays for mandatory and prohibitory injunctive relief, and a monetary award against Defendants for compensatory, punitive and exemplary damages based on the malicious and despicable nature of such actions.

**Count III**
**Abuse Of Process**
**Against Szulik**

59.     Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 58, inclusive.

60.     Plaintiff is informed and believes and on that basis alleges that Defendant Szulik sued TAG and subsequently threatened to add Galanis to the unrelated TAG lawsuit by alleging joint wrongdoing between Galanis and TAG, unless Galanis took immediate and demonstrable steps to coerce Gerova to delay or cancel its proposed acquisition of IEAH, for Szulik's benefit.  Plaintiff is informed and believes and on that basis further alleges

that Szulik's intent in threatening Galanis with litigation was and is to further Szulik's planned tax-avoidance strategy, which depends on Szulik's erroneous proposition that his IEAH investments, among others, have no value.

61.         Szulik's above-described abuse of the litigation process has directly and proximately caused damage to Galanis, including but not limited to attorney's fees and costs incurred to respond to Szulik's threats and coercion, and his derogatory and erroneous allegations, in an amount to be determined at trial.

62.         Plaintiff is entitled to and hereby prays for a monetary award against Defendant Szulik for compensatory, punitive and exemplary damages based on the malicious and despicable nature of such actions.

**Count IV**
**Conversion**
**Against Szulik**

63.         Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 62, inclusive.

64.         Plaintiff is informed and believes and on that basis alleges that prior to Szulik's actions Plaintiff held right title and interest free and clear of any encumbrances to securities in the Galanis entities' accounts worth approximately $30,000,000.00.

65.         Plaintiff is informed and believes and on that basis alleges that Szulik's used unreasonable pressure to coerce TAG, objecting to TAG-placed investments that he alleged were not readily marketable. Plaintiff is informed believes and on that basis further alleges that although the allegedly unmarketable objected-to investments were

initially made with Szulik's knowledge and consent, Szulik unreasonably demanded that TAG remove Szulik from those investments under threat of litigation.

66.     Plaintiff is informed and believes and on that basis alleges that as a result of Szulik's threats and coercive actions, TAG and Szulik arranged for Szulik to be removed from the objected-to investments by using funds derived from the sale or disposition of securities belonging to the Galanis entities.

67.     Plaintiff is informed and believes and on that basis alleges that Szulik was the recipient of approximately $30,000,000.00 in funds derived from the sale or disposition of securities held by the Galanis entities.

68.     Plaintiff is informed and believes and on that basis alleges that Plaintiff intended such sums to be used by and for the benefit of Plaintiff. Plaintiff is informed and believes and on that basis further alleges that Szulik had no right to any funds derived from the sale or disposition of securities held by the Galanis entities.

69.     Plaintiff is informed and believes and on that basis alleges that as a result of Szulik's actions, and without Plaintiff's consent, Plaintiff's property has been held in a manner inconsistent with plaintiff's property rights and that Szulik perpetrated a wrongful exercise of dominion over Plaintiff's property and substantially interfered with Plaintiff's right to possession of his property.

70.     Plaintiff is informed and believes and on that basis alleges that Szulik improperly caused the conversion of securities owned by Plaintiff, and funds derived from the sale or disposition thereof, for Szulik's own use and for Szulik's exclusive benefit.

71.     As a direct and proximate cause of such breaches, Plaintiff has been damaged in an amount to be determined at trial.

72.      Plaintiff is entitled to and hereby prays for a monetary award against Defendant Szulik for compensatory, punitive and exemplary damages based on the malicious and despicable nature of such actions.

**Count V**
**Accounting**
**Against Szulik**

73.      Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 72, inclusive.

74.      Plaintiff is informed and believes and on that basis alleges that as a result of the knowing actions of Szulik, whereby Szulik was removed from investments he objected to, Szulik was the recipient of approximately $30,000,000.00 in funds derived from the sale or disposition of securities held by the Galanis entities, in exchange for which some or all of the allegedly unmarketable securities Szulik objected to holding were placed in the Galanis entities' accounts.

75.      Plaintiff is informed and believes and on that basis alleges that Szulik terminated his investment management agreement with TAG and transferred his account to a new investment adviser.  Plaintiff is informed and believes and on that basis further alleges that Plaintiff cannot know what funds or investments belonging to Plaintiff that Szulik received as a result of his wrongful acts, or what funds or investments belonging to Plaintiff that Szulik still holds.

76.      Plaintiff is informed and believes and on that basis further alleges that the accounts where Szulik holds Plaintiff's funds or investments are so complicated, have such a lack of adequate documentation, and are accounted for so improperly that an ordinary legal action demanding a fixed sum is impracticable and that it is impossible for

Plaintiff to fully understand such matters and the extent of wrongdoing by Szulik without a court-ordered accounting.

**Count VI**
**<u>Violation Of The Electronic Communications Privacy Act</u>**
**<u>18 U.S.C. §§ 2701 and 2707</u>**
**Against Hintz**

77.     Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 76, inclusive.

78.     Plaintiff is informed and believe and based thereon alleges that in violation of the Hintz intentionally accessed without authorization an electronic communication system intended for the exclusive access of an employee of Netfive, and was determined to have misappropriated or illegally obtained access to emails and documents containing confidential and material non-public information belonging to Galanis, Gerova, Net Five and its employees.

79.     Plaintiff is informed and believes and based thereon alleges that Galanis has been damaged as a result of Hintz's actions in an amount to be determined at trial.

80.     Plaintiff is informed and believes and based thereon alleges that unless enjoined by this Court, Hintz will continue to violate the Electronic Communications Privacy Act ("ECPA") and will continue to cause Plaintiff irreparable injury through the dissemination of unlawfully obtained protected information.  Pursuant to 18 U.S.C. §§ 2701 and 2707, Plaintiff is entitled to and hereby prays for mandatory and prohibitive injunctive relief against Hintz to prevent future violations of the ECPA and resulting damage to Plaintiff, and to rectify any past damage to Plaintiff caused by Hintz's prior violations of the ECPA.

81.     Pursuant to 18 U.S.C. §§ 2701 and 2707, Plaintiff is entitled to and hereby prays for a compensatory damages award against Defendant Hintz, in no case less than the mandatory fine amount of $1,000 imposed by law.

82.     Based upon the malicious and despicable nature of Defendant Hintz' actions, Plaintiff is also entitled to and hereby prays for a punitive and exemplary damages against Defendant Hintz.

83.     Plaintiff is also entitled to and hereby prays for an award of attorney's fees and costs incurred for bringing this action.

**Count VII**
**Violation Of The Computer Fraud And Abuse Act**
**18 U.S.C. §1030**
**Against Hintz**

84.     Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 83, inclusive.

85.     Plaintiff is informed and believe and based thereon alleges that intentionally and without authorization, Hintz accessed a protected computer containing confidential and material non-public information belonging to Galanis, Gerova, Net Five and its employees, and affecting interstate commerce.

86.     Plaintiff is informed and believe and based thereon alleges that Hintz's conduct has intentionally or recklessly caused Galanis to be damaged, in an amount to be determined at trial, but in no case less than $5,000.

87.     Plaintiff is informed and believes and based thereon alleges that unless enjoined by this Court, Hintz will continue to violate the Computer Fraud and Abuse Act ("CFAA"), and will continue to cause Plaintiff irreparable injury and the dissemination of unlawfully obtained protected information.  Pursuant to 18 U.S.C. §1030, Plaintiff is entitled to and hereby prays for mandatory and prohibitive injunctive relief against Hintz to prevent future damage to Plaintiff and interstate commerce, and to rectify any past damage to Plaintiff caused by Hintz's prior violations of the CFAA.

88.     Pursuant to 18 U.S.C. §18 U.S.C. §1030, Plaintiff is entitled to and hereby prays for a compensatory damages award and appropriate injunctive relief.

**Count VIII**
**Injunctive Relief**
**Against All Defendants**

89.     Plaintiff realleges and incorporates by reference each allegation set forth in paragraphs 1 through 88, inclusive.

90.     Plaintiff is informed and believes and based thereon alleges that Defendants have acted and are continuing to act in concert in an effort to damage Galanis' reputation, for the benefit of their respective, and possibly aligned purposes, and to unlawfully affect the price for the publicly-traded Gerova stock for their own benefit.

91.     Plaintiff is informed and believe and based thereon alleges that Defendants have caused Plaintiff to suffer irreparable injury, and unless enjoined by this Court, Defendants will continue to cause Plaintiff irreparable injury, including damage to Plaintiff's professional reputation and his employer's and associates business reputations.

92.     Plaintiff has no alternatively available or adequate remedy at law to remedy Defendants' ongoing wrongful acts, rendering injunctive relief necessary.

93.      Plaintiff accordingly seeks mandatory and prohibitory injunctive relief in an attempt rectify the damage caused by Defendants' past actions and prevent similar future damage from occurring, including but not limited to an order requiring the correction, at Defendants' expense, of any prior publications containing false or misleading information disseminated by Defendants.

### PRAYER FOR RELIEF

Wherefore Plaintiff prays for judgment against Defendants and each of them as follows:

1.  For mandatory and prohibitory injunctive relief restraining the Defendants and their agents, employees, officers, and representatives from using misappropriated or otherwise unlawfully obtained materials, or taking any further wrongful or concerted action to damage Plaintiff's reputation, and to rectify any past damage caused to Plaintiff;

2.  For compensatory damages according to proof;

3.  For mandatory damages against Hintz of no less than $1,000 pursuant to 18 U.S.C. §2707.

4.  For treble damages according to proof;

5.  For exemplary and punitive damages;

6.  For an accounting;

7.  For attorneys fees;

8.  For costs of suit; and

9.  For such other and further relief as the Court deems just and warranted.

Dated this 24th day of January 2010.

Respectfully submitted,

ASHCROFT SULLIVAN LLC

By:   _____
Michael J. Sullivan
Massachusetts Bar No. 487210
Attorney for Plaintiff
1 Post Office Square, Suite 3750
Boston, MA 02109
Tel: (617) 573-9400
msullivan@ashcroftlawfirm.com