United States District Court
District of Massachusetts

```
_____
                               )
JASON GALANIS,                 )
        Plaintiff,             )
                               )
        v.                     )    Civil No.
                               )    11-10122-NMG
MATTHEW SZULIK, SCOTT HINTZ,   )
KEITH DALRYMPLE and DALRYMPLE  )
FINANCE LLC,                   )
        Defendants.            )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

On January 24, 2011, plaintiff Jason Galanis brought suit against defendants Matthew Szulik, Scott Hintz, Keith Dalrymple and Dalrymple Finance LLC for intentional interference with contractual relations, civil conspiracy, abuse of process, conversion, accounting and violation of the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act. The suit alleged that Szulik, the former CEO of Rat Hat, Inc., conspired with two co-defendants to tarnish plaintiff's reputation and interfere with his business relationships.

After receiving notice that defendants intended to file a Rule 11 motion, Galanis voluntarily dismissed the suit. Pending before the Court is Szulik's motion for attorneys' fees and costs.

I.  **Background**

   A.  **North Carolina action**

In December, 2010, Szulik filed suit against James Tagliaferri of TAG Virgin Islands, Inc. ("TAG"), his former personal financial advisor, for fraud and conspiracy. The complaint alleges that TAG made a series of unauthorized investments and personal loans in exchange for kickbacks in excess of $1 million. While Galanis was not named as a defendant in that case, the complaint alleges that the fraudulent investments and loans included 1) a $3.75 million loan to a Galanis entity that ran a Penthouse-affiliated strip club in Mexico City, 2) a $900,000 personal loan to finance Galanis' home in California and 3) a $20 million investment in International Equine Acquisitions Holdings, Inc. ("IEAH"), a private horse-racing company connected to Galanis.

   B.  **IEAH-Gerova transaction**

Less than one week after Szulik filed the complaint in the North Carolina action, IEAH delivered to its shareholders, including Szulik, a written announcement that it intended to sell all of its assets to Gerova, a Bermuda-based reinsurance company. Galanis was in charge of mergers and acquisitions for Gerova and, given his other connections to the investment fraud scheme, Szulik suspected that the proposed asset transfer might be an attempt to circumvent reimbursement of the debts owed in

connection with the North Carolina action.  After Szulik purportedly inquired into the purpose behind the asset sale, the IEAH Board abruptly called off the transaction.

   **C.   This action**

Galanis filed this case claiming that Szulik's actions constituted intentional interference with the proposed IEAH-Gerova transaction and violated a host of other laws.  Galanis alleges that Szulik 1) conspired with the other two defendants, Dalrymple and Hintz, to harm Galanis' reputation and drive down the price of Gerova stock, 2) coerced companies into passing up Galanis-related investments, such as the IEAH/Gerova Transaction, in order to manufacture losses for tax purposes, 3) forced TAG to sell $30 million worth of securities belonging to Galanis entities and 4) violated numerous securities laws in the process.

Days before Galanis filed the complaint, defense counsel communicated to him that the plaintiff's conspiracy theories lacked factual support and warned him that if he filed the complaint, defendant would respond by filing a Rule 11 motion for sanctions.

Plaintiff filed the complaint anyway, whereupon defense counsel reiterated his intention to file a motion pursuant to Fed. R. Civ. P. 11.  Plaintiff's counsel asserted that he could back up the complaint with affidavits from confidential sources and requested that defense counsel defer service of the motion

until the parties had the opportunity to meet and discuss the matter. Defense counsel agreed and met with plaintiff's counsel on February 17, 2011. At that meeting, plaintiff's counsel did not share any affidavits with the defense team and, instead, proposed that Szulik pay a settlement and release his potential claims against Galanis in the North Carolina action in exchange for dismissal of the complaint.

Defense counsel declined the offer and formally served a Rule 11 motion on plaintiff's counsel on March 3, 2011. Shortly thereafter, Galanis indicated that he was willing to dismiss the suit and pay attorneys' fees and the parties began negotiating a stipulated order to that effect. To facilitate the negotiating process, defense counsel agreed to extend the 21-day Rule 11 safe harbor period to April 6, 2011. Taking advantage of that extension and reneging on the parties' proposed agreement, plaintiff voluntarily dismissed the suit on April 5, 2011, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), presumably to avoid sanctions.

On April 19, 2011, Szulik moved for an award of attorneys' fees and costs against Galanis and his counsel, Ashcroft Sullivan, LLC, which plaintiff opposed.

## II. Legal Analysis

### A. Standard

A district court may award attorneys' fees as a sanction

pursuant to 28 U.S.C. § 1927, the various sanctioning provisions of the Federal Rules of Civil Procedure and its inherent powers. Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991).

Section 1927 of Title 28 of the United States Code authorizes a court to impose reasonable "costs, expenses, and attorneys' fees" against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." For an attorney to be sanctioned under the statute, his conduct must "evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008) (internal citation omitted).

The Federal Rules authorize a court to assess "reasonable attorneys' fees and other expenses" against an "attorney, law firm or party" who files a complaint for an improper purpose or fails to conduct a reasonable inquiry into the underlying law and facts before filing. Fed. R. Civ. P. 11. In 1993, Rule 11 was amended to include a "safe harbor" provision providing that a motion for sanctions

> shall be served [on the non-moving-party] but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(2). In other words, Rule 11 sanctions may not be awarded unless the shortcomings of the complaint have been

pointed out to the offending parties and they have been given a 21-day window to correct them or withdraw the complaint.

When sanctions are not expressly authorized by 28 U.S.C. § 1927 or the Federal Rules, a district court may invoke its inherent power to award attorneys' fees and costs against parties or attorneys who "act in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46; McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 43 (1st Cir. 2002) ("[I]f an attorney, rather than a client, is responsible for sanctionable litigation tactics, the court may sanction the attorney."). Sanction awards for such conduct

> serv[e] the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Chambers, 501 U.S. at 46; see also Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 181 (D.C. Cir. 1980) ("[A]dvocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto.").

Most federal circuit courts agree that a litigant's filing of a frivolous lawsuit for an improper purpose constitutes bad faith and warrants sanction. See, e.g., Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1320 (11th Cir. 2002); Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 181 (D.C. Cir. 1980); BDT

Prods., Inc. v. Lexmark Intern., Inc., 602 F.3d 742, 752 (6th Cir. 2010); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1108 (9th Cir. 2002); Batson v. Neal Spelce Assocs., Inc., 805 F.2d 546, 550 (5th Cir. 1986); Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980).

While courts must exercise restraint and discretion in wielding their inherent sanction powers, in light of their potency and unconstrained nature, Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980), they should not hesitate to use them when "neither the statute[s] nor the Rules are up to the task," Chambers, 501 U.S. at 50; see also Peer v. Lewis, 606 F.3d 1306, 1314-15 (11th Cir. 2010) ("When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." (citing Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1474 (D.C. Cir. 1995))).

Should a court choose to exercise its inherent sanction power, it "must describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation" of the reasons justifying the issuance and the amount of the award. F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico, 563 F.3d 1, 6 (1st Cir. 2009).

**B. Application**

The conduct of plaintiff's counsel in filing the complaint only to dismiss it a few months later does not warrant sanctions

under § 1927 because commencing an action, however frivolous, is not enough to bring an attorney within the ambit of § 1927. Jensen, 546 F.3d at 64. To be sanctionable thereunder, an attorney's conduct must "multiply" proceedings (i.e.,"must have an effect on an already initiated proceeding"). Id. at 65.

Nor does the conduct of the plaintiff or his lawyers violate the dictates of Fed. R. Civ. P. 11. Defendant never filed a Rule 11 motion with the Court and, in any event, plaintiff voluntarily dismissed the complaint within the agreed-upon extended safe harbor period.

Nevertheless, the Court will invoke its inherent powers to sanction the plaintiff and his counsel for filing a frivolous lawsuit for an improper purpose. It is apparent that this action was filed to extort a quick settlement from Szulik and intimidate him into releasing potential claims against Galanis in the North Carolina litigation. Sanctions will remind plaintiff and his lawyers that the federal court system is not to be used to settle personal grudges and should deter them from engaging in similar conduct in the future. In addition to sanctioning plaintiffs for their misconduct, an award of reasonable attorneys' fees and expenses will help defray the costs incurred by Szulik in defending against this frivolous action.

The Court hereby finds that the following conduct of the plaintiff and his attorneys constitutes "bad faith" and justifies

an award of reasonable attorneys' fees and expenses in this case.

**1. The allegations in the complaint are not factually supported.** Despite facing sanctions, neither plaintiff nor his counsel has come forward with any evidence supporting the allegations in the complaint, described in more detail in Section I.C. supra. Significantly, plaintiff's opposition to defendant's motion for sanctions is devoted almost exclusively to challenging this Court's authority to impose sanctions rather than supporting the factual bases for the complaint. The defendants, whom plaintiff alleges were co-conspirators, have submitted undisputed affidavits in which they attest that they have never met or communicated, much less conspired, with one another. Plaintiff, in contrast, has submitted no affidavit. Although his attorneys have submitted affidavits, they are filled with conclusory reassurances such as,

> all claims and allegations . . . were adequately supported by evidence [and w]here allegations could not be supported through evidence supplied by Mr. Galanis, the content of additional evidence to be supplied by confidential third parties.

Conspicuously absent is any mention of the evidence itself.

**2. Ashcroft Sullivan LLC breached its duty as plaintiff's counsel to investigate the factual basis for the complaint.** The Federal Rules of Civil Procedure impose a duty on attorneys to conduct a reasonable inquiry into pleadings filed with the court to ensure they are well grounded in fact. Fed. R. Civ. P. 11(b).

Plaintiff's counsel claims that the complaint was vetted "paragraph by paragraph" by six lawyers, including former United States Attorneys, federal prosecutors and a retired judge. He steadfastly maintains that the information provided by Galanis and unnamed "confidential" third-parties provided a proper foundation for the complaint. He fails to explain, however, why, if the allegations were so "carefully scrutinized" and "thoroughly researched," he voluntarily dismissed the complaint so shortly after it was filed. Nor does he address why he filed it despite the absence of evidence supporting plaintiff's material allegations and after receiving a letter from defendant's counsel contesting those allegations. At the very least, that correspondence put plaintiff's counsel on notice that information provided by his client and sources may have been unreliable and perhaps even false. It should have prompted further investigation. While an attorney is usually entitled to rely on the representations of his client in filing a complaint, Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 549-50 (1991), he must not persist in doing so after his client's representations have been shown to be inaccurate.

**3. The complaint was filed for an improper purpose**. This Court's assessment of the circumstances indicates that the complaint was filed to extort a settlement from Szulik and to intimidate him into releasing potential claims against Galanis in

the North Carolina litigation.

Plaintiff asserts that the imposition of sanctions in this case would "constitute an unauthorized end run around Rule 11's statutory provisions." This Court disagrees. Rule 11 did not abrogate a court's inherent sanction powers, nor was it intended to serve as a check on those powers. Fed. R. Civ. P. 11 advisory committee's note (emphasizing that Rule 11 "does not inhibit the court . . . in exercising its inherent powers"). Rather, the rule was "intended to reduce the reluctance of courts to impose sanctions" and to discourage abusive litigation tactics and the filing of frivolous claims. Id. (emphasis added). The safe harbor provision, added in 1993, was designed to give parties the opportunity to correct or withdraw ill-advised pleadings before sanctions are imposed, Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 397-99 (4th Cir. 2004), not to shield vexatious litigants from the consequences of filing frivolous lawsuits.

Even if plaintiff and his counsel were entitled to safe harbor in this case, the record indicates that they received the functional equivalent. Before the complaint was filed, defense counsel gave notice that it lacked factual support and that he would file a motion for sanctions if plaintiff proceeded to file it. Plaintiff and his counsel had the option, upon reflection, to forgo this unwarranted action but went forward nevertheless,

forcing Szulik and the other defendants to expend time and money defending against it. They will be sanctioned for their irresponsible conduct.

**ORDER**

In accordance with the foregoing, defendant's motion for attorneys' fees and costs (Docket No. 10) is **ALLOWED**. Defendant's simultaneous motion for leave to submit a petition on the amount of fees and costs is also **ALLOWED**. That submission shall be made on or before January 13, 2012, and plaintiff's response, if any, shall be filed on or before January 27, 2012. **So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated December 28, 2011